IN THE DISTRICT/SUPERIOR COURT FOR THE STATE OF ALASKA
AT PALMER

SANDRA PESCHANG

      Plaintiff(s),

vs.

FRED MEYER STORES, INC.

      Defendant(s).

CASE NO. 3PA-21-01677CI

**SUMMONS AND NOTICE TO BOTH PARTIES OF JUDICIAL ASSIGNMENT**

**To Defendant:** FRED MEYER STORES, INC.

You are hereby summoned and required to file with the court a written answer to the complaint which accompanies this summons. Your answer must be filed with the court at 435 South Denali Street, Palmer, Alaska 99645 within 20 days* after the day you receive this summons. In addition, a copy of your answer must be sent to the plaintiff's attorney, or the plaintiff (if unrepresented) JAMES J. DAVIS, JR., NORTHERN JUSTICE PROJECT, LLC whose address is: 406 G STREET, SUITE 207, ANCHORAGE, AK 99501.

If you fail to file your answer within the required time, a default judgment may be entered against you for the relief demanded in the complaint.

If you are not represented by an attorney, you must inform the court and all other parties in this case, in writing, of your current mailing address and any future changes to your mailing address and telephone number. You may use court form *Notice of Change of Address / Telephone Number* (TF-955), available at the clerk's office or on the court system's website at https://public.courts.alaska.gov/web/forms/docs/tf-955.pdf, to inform the court. – OR – If you have an attorney, the attorney must comply with Alaska R. Civ. P. 5(i).

**NOTICE OF JUDICIAL ASSIGNMENT**

To: Plaintiff and Defendant
This case has been assigned to:

JUN 0 7 2021

[X] Superior Court Judge Jonathan Woodman
[ ] Superior Court Judge John C. Cagle
[ ] Superior Court Judge Kari C. Kristiansen
[ ] Superior Court Judge Kristen C. Stohler

[ ] District Court Judge William L. Estelle
[ ] District Court Judge Shawn Traini
[ ] District Court Judge Thomas V. Jamgochian

June 17, 2021
Date

CLERK OF COURT
By: Amanda Wells
Deputy Clerk

* The State or a state officer or agency named as a defendant has 40 days to file its answer. If you have been served with this summons outside the United States, you also have 40 days to file your answer.

CIV-100 PALMER (12/20)(cs)
SUMMONS

Civil Rules 4, 5, 12, 42(c), 55

Case 3:21-cv-00171-JMK   Document 1-1   Filed 07/21/21   Page 1 of 14

James J. Davis, Jr., AK Bar No. 9412140
Goriune Dudukgian, AK Bar No. 0506051
**NORTHERN JUSTICE PROJECT, LLC**
406 G Street, Suite 207
Anchorage, AK 99501
(907) 308-3395 (telephone)
(866) 813-8645 (fax)
Email: jdavis@njp-law.com
Email: gdudukgian@njp-law.com

Attorneys for the Plaintiff

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT PALMER

| | |
|---|---|
| SANRDA PESCHANG, </br></br> Plaintiff, </br></br> vs. </br></br> FRED MEYER STORES, INC., </br></br> Defendants. | ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> )  Case No. 3PA-21-_____CI |

## COMPLAINT

COMES NOW the plaintiff, Sandra Peschang, by and through counsel, the Northern Justice Project, LLC, and alleges and requests relief as follows:

### INTRODUCTION

1. Ms. Sandra Peschang worked for Fred Meyer for years. She was a quality and dependable employee with good performance reviews. One supervisor even noted that Ms. Peschang was "a joy to have around," was "uplifting and positive," and was an "asset."

Complaint
*Sandra Peschang v. Fred Meyer Stores, Inc.*
Page 1 of 13


Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

2. However, in Summer 2020, Ms. Peschang became aware of significant safety and sanitation issues at the Wasilla Fred Meyer. This included health and occupational concerns for her fellow employees. It also included concerns for Fred Meyer customers, like the presence of blood or industrial cleaning solutions around prepared foods, and/or Fred Meyer serving food that was otherwise unsafe to eat.

3. Ms. Peschang repeatedly told numerous different Fred Meyer managers and authorities about these concerns. She was ignored.

4. Then, after repeatedly raising concerns in-house, Ms. Peschang called the Alaska Division of Labor Standards and Safety, Occupational Safety and Health. This led to an investigation where various of Ms. Peschang's health and safety concerns were verified by state inspectors, and where Fred Meyer was given citations and was fined.

5. After Fred Meyer learned that Ms. Peschang had brought her complaints to the state, she soon suffered a barrage of hostility and retaliation by and from Fred Meyer's management. She was berated, intimidated, deprived of breaks, and isolated. She was subjected to absurd and changing schedules, denied time-off, verbally abused, and unfairly blamed for things she had nothing to do with. She was excluded from meetings, assigned new positions without training, and tasked to do heavy work alone (which led to physical injuries and a hospitalization).

6. Then, Ms. Peschang was subjected to a bogus "investigation" about a contrived incident, and was suspended and fired over the same.

Complaint
*Sandra Peschang v. Fred Meyer Stores, Inc.*
Page 2 of 13

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

7. Fred Meyer even prevented Ms. Peschang from qualifying for public assistance, like food stamps, after it left her destitute by wrongfully firing her.

8. Instead of simply addressing the safety concerns that Ms. Peschang repeatedly informed Fred Meyer about – and some of which were verified by the state – Fred Meyer subjected her to relentless abuse and retaliation, all for having the courage to speak up. This caused incredible financial damage and emotional distress to Ms. Peschang – and ultimately put Fred Meyer's own customers at risk.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under AS § 22.10.020(c) and (g).

10. Venue is proper in Palmer under AS § 22.10.030 and Civil Rule 3.

## PARTIES

11. Sandra Peschang is a resident of Wasilla, Alaska.

12. The defendant, Fred Meyer Stores, Inc. ("Fred Meyer") is a corporation authorized to do business, and which engages in regular and substantial business, in the State of Alaska.

## GENERAL ALLEGATIONS

13. On October 10, 2016, Ms. Peschang began working for Fred Meyer.

14. Ms. Peschang first worked for a Fred Meyer in Nashville, Tennessee.

15. In 2018, Ms. Peschang transferred to the Fred Meyer in Wasilla. The address of that store is 1501 E Parks Highway, Wasilla, AK 99654.

16. Ms. Peschang has had many roles at Fred Meyer. From October 2016 to November 2018, she worked as an assistant deli manager. She worked in the

Complaint
*Sandra Peschang v. Fred Meyer Stores, Inc.*
Page 3 of 13

seafood department from November 2018 through March 2019. She then worked in the home department, before later returning to work as a clerk in the deli.

17. As a deli clerk, Ms. Peschang had various duties. She would often cut between 350 and 500 pounds of meat and cheese every day, clean slicers and equipment, stock items, move items, and assist in the storage of items. She also assisted with customer service, including making sandwiches for customers.

18. As of February 2021, Ms. Peschang worked at Fred Meyer for forty hours per week at a wage of $16.69 per hour.

19. Throughout her time at Fred Meyer, Ms. Peschang was a quality and dependable employee. Fred Meyer's own records corroborate this.

20. For instance, in a January 2020 "Fred Meyer Hourly Performance Review," Ms. Peschang received positive reviews. She was rated as "consistently delivers" in all areas. She received no ratings of "development" or "opportunity for development." And her overall rating was "consistently delivers expectations." Her supervisor even commented: "Sandra is a joy to have around. She can be so uplifting and positive and is always going out of her way for coworkers. Thank you for all that you do. You are an asset to the home department."

21. In a November 2020 "Hourly Performance Appraisal," Ms. Peschang also received positive reviews. She did not receive any "no" ratings for exhibiting Fred Meyer's "Promise Behaviors." And for Fred Meyer's "Core Behaviors," which include things like demonstrating productivity or maintaining positive customer

Complaint
*Sandra Peschang v. Fred Meyer Stores, Inc.*
Page 4 of 13

relations, she received a "yes" rating for every single one. She furthermore was listed as meeting expectations for her overall job performance.

22. Years earlier, when recommending that Fred Meyer approve Ms. Peschang's transfer to Wasilla, the Assistant Store Manager of the Nashville store praised Ms. Peschang, stating that she was "dependable" and "organized," that she was a "team builder," that she had the "cleanest floors in [her] division," that she "works hard," that she "will close all [week] if needed," that she will "work overnight if needed," that she "has open availability," and that she was "driven."

23. In Summer 2020, Ms. Peschang started to have significant concerns about safety and sanitation at the Wasilla Fred Meyer. Among other things, she saw that Fred Meyer was serving food to customers that had sat out for too long or was otherwise unsafe to eat. She also observed sanitary issues, like the presence of blood where food was being prepared, or the presence of industrial cleaners near or even in the flour used to prepare food.

24. Ms. Peschang alerted Fred Meyer's management about these safety and sanitation issues.

25. First, Ms. Peschang complained to Deli Manager Dalton Hickey and Deli Assistant Manager Tell Ross. In response, they ignored her complaints.

26. Then, Ms. Peschang complained to the Assistant Store Manager Janice Kelven. However, she was again disregarded.

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

Complaint
*Sandra Peschang v. Fred Meyer Stores, Inc.*
Page 5 of 13

27. After that, Ms. Peschang complained to Holly Mitchell, who was a District Human Resources Manager for Fred Meyer. In response, Ms. Mitchell assured Ms. Peschang that she would look into her concerns.

28. About a week later, Deli Manager Dalton Hickey began to act negatively toward Ms. Peschang. It seemed clear that Holly Mitchell had shared Ms. Peschang's complaints with Hickey. And, aside from Hickey's new hostility, there was still no sign that Ms. Peschang's concerns were being investigated, much less resolved.

29. After repeatedly trying to address her concerns in house, and after different Fred Meyer employees and managers failed to respond appropriately, Ms. Peschang contacted the Alaska Division of Labor Standards and Safety, Occupational Safety and Health ("AKOSH") and informed it of her safety and sanitation concerns.

30. Around August 7, 2020, AKOSH investigators conducted a surprise inspection of the Wasilla Fred Meyer, as a result of Ms. Peschang's complaints. AKOSH interviewed various employees and investigated issues at the workplace.

31. AKOSH's surprise inspection confirmed many of Ms. Peschang's concerns: Fred Meyer was given a written citation and was fined.

32. First, AKOSH cited Fred Meyer because it determined that Fred Meyer employees were being exposed to bloodborne pathogen hazards and other potential infectious material, that Fred Meyer's written materials and training

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

about these issues were inadequate, and that hepatitis B vaccines were not being provided to employees identified with occupational exposures.

33. Second, AKOSH cited Fred Meyer because it determined that a floor drain at Fred Meyer was not adequately removing water after the floor was cleaned the night before, that standing water was present, and that another floor drain had an opening that was a slip or trip or falling hazard.

34. Third, AKOSH cited Fred Meyer because it determined that Fred Meyer employees were being exposed to chemical hazards due to improper use and storage, that a chemical container was leaking and improperly stored on a sink, and that multiple chemicals were improperly labeled.

35. Fourth, AKOSH cited Fred Meyer because it determined that gloves were being improperly disposed of, and that all employees had not been trained about the hazards of chemicals used to decontaminate or sterilize surfaces that may be contaminated with the biohazards associated with handling raw meat.

36. Deli Assistant Manager Tell Ross told one of Ms. Peschang's colleagues that he knew it was Ms. Peschang who called AKOSH.

37. Ms. Peschang soon suffered a barrage of hostility and retaliation at the hands of Fred Meyer's management.

38. The store manager of the Wasilla Fred Meyer, Eric Coduti, refused to look at Ms. Peschang directly in the face.

39. Ms. Peschang was verbally berated and intimidated. For instance, a food coordinator told Ms. Peschang "I don't even know you" in an intimidating tone,

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

even though the two definitely knew each other. A Natural Food Manager called Ms. Peschang a "snitch."

40. Some of Ms. Peschang's breaks and/or lunches were canceled by Fred Meyer's management, even while her co-workers and managers received breaks and/or lunch times.

41. Ms. Peschang was not informed by Fred Meyer's management about training requirements

42. Ms. Peschang's co-workers were instructed not to assist her, and even sometimes to leave the area in which she was working.

43. Ms. Peschang had her shift times changed by Fred Meyer's management with no or little notice, and often in absurd ways. For instance, on one occasion she finished a 6:00 am to 2:00 pm shift, only to be told that she would need to return to the store at midnight in order to work yet another eight hour shift.

44. Ms. Peschang was also told by Fred Meyer's management, with little to no warning, that her traditional shift time would be shifted to a midnight to 8:30 am shift, which left her scrambling to arrange childcare.

45. Other petty scheduling retaliation by Fred Meyer's management occurred when Ms. Peschang's prescheduled days of unavailability were overwritten and she was required to come into work anyways, or when her manager refused to sign Ms. Peschang's vacation schedule even after she changed that schedule to accommodate his requests.

Complaint
*Sandra Peschang v. Fred Meyer Stores, Inc.*
Page 8 of 13

46. Ms. Peschang suffered more verbal abuse from the deli manager, who had a volatile temper. She requested a change to a different department to avoid this hostility, but was told that she could not transfer without losing work hours.

47. Ms. Peschang was ironically blamed by Fred Meyer's management for food being left out, even on days that she was not working.

48. Ms. Peschang was subjected to open hostility and bullying from Fred Meyer's management.

49. Ms. Peschang was ostracized and excluded from department meetings with the full knowledge of her managers.

50. Ms. Peschang was unfairly blamed by Fred Meyer's management for inventory shrinkage and equipment malfunctions.

51. Ms. Peschang was placed into new work positions by Fred Meyer's management without training, even though training was available.

52. Ms. Peschang was tasked by Fred Meyer's management to do heavy work without the assistance of co-workers. For instance, she was repeatedly tasked with moving overloaded and heavy food carts filled with items like chicken, which she could not do alone. Yet even though Ms. Peschang explicitly asked for help with such tasks, any help was fleeting. As a result, around December 15, 2020, she suffered an injury while trying to move such carts. This was not the first time that an employee was injured while trying to move such a cart.

53. Some of this strain culminated on January 7, 2021, when Ms. Peschang began to feel ill while working. When she went to the hospital, she

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

learned that she had suffered hernias. Her doctor limited her to light duty until she could undergo a surgery on March 1, 2021.

54. On January 18, 2021, when Ms. Peschang returned to work, she was placed in a new role at the front of the store where she was tasked with sanitizing carts, handing out masks, and also with checking receipts if a shopper set off an alarm while exiting.

55. Ms. Peschang was assigned to this new position by Fred Meyer's management without any training.

56. On February 7, 2021, an incident occurred where shoppers attempted to exit the store without paying for items.

57. On February 11, 2021, Fred Meyer suspended Ms. Peschang, purportedly for her handling of that incident. This suspension occurred even though Fred Meyer never trained Ms. Peschang how to work in the role in question, and even though she repeatedly asked for training before and after the incident.

58. Fred Meyer informed Ms. Peschang that her suspension was pending an "investigation."

59. Ms. Peschang was never meaningfully informed about or included in this supposed "investigation." For instance, Fred Meyer did not question her or allow her to defend herself in its purported "investigation." Nor is there any documentation of this supposed "investigation" in Ms. Peschang's personnel file.

60. Nevertheless, on February 28, 2021, Ms. Peschang was told to come to Fred Meyer by Kendra Hamilton of Human Resources.

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

61. This was the day before Ms. Peschang was set to undergo surgery.

62. After Ms. Peschang arrived, Ms. Hamilton and Store Manager Randy Mitchell took Ms. Peschang into his office. Randy Mitchell is the husband of the same Holly Mitchell who Ms. Peschang had earlier reported safety problems to.

63. During the February 28, 2021 meeting, Randy Mitchell and Kendra Hamilton summarily fired Ms. Peschang. They did not explain why.

64. Even when Ms. Peschang inquired for a letter regarding the termination, Mr. Mitchell refused to provide one.

65. As a result of Fred Meyer's actions and inactions, Ms. Peschang has had her reputation damaged, has suffered significant financial losses and has suffered significant emotional distress.

### FIRST CAUSE OF ACTION – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

66. The foregoing paragraphs of this Complaint are incorporated herein as though fully set forth.

67. In acting in the aforesaid fashion, Fred Meyer violated the covenant of good faith and fair dealing which it owed to Ms. Peschang.

68. Ms. Peschang is entitled to actual, consequential, and compensatory damages.

### SECOND CAUSE OF ACTION – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

69. The foregoing paragraphs of this Complaint are incorporated herein as though fully set forth.

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645

70. A retaliatory discharge in violation of an explicit public policy gives rise to a tort claim. *See Reust v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807, 812 (Alaska 2005).

71. In Alaska, there is a public policy prohibiting retaliation against employees for raising safety concerns. Per AS 18.60.089(a), "[a] person may not discharge or discriminate against an employee because the employee has filed a complaint or instituted or caused to be instituted a proceeding related to the enforcement of occupational safety and health standards, or has testified or is expected to testify in a proceeding relating to occupational safety and health or because an employee has exercised personally or on behalf of others a right afforded under AS 18.60.010 - 18.60.105."

72. In acting in the aforesaid fashion, Fred Meyer retaliated against Ms. Peschang because she raised health and safety concerns.

73. Ms. Peschang is entitled to tort damages, including actual and punitive and consequential damages.

### THIRD CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

74. The foregoing paragraphs of this Complaint are incorporated herein as though fully set forth.

75. In acting in the aforesaid fashion, Fred Meyer's conduct was extreme and outrageous.

76. In acting in the aforesaid fashion, Fred Meyer intended to cause Ms. Peschang to suffer emotional distress.

77. In acting in the aforesaid fashion, Fred Meyer caused Ms. Peschang to experience severe emotional distress.

78. Ms. Peschang is entitled to actual, punitive, and consequential damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Ms. Peschang respectfully requests the Court to grant:

(1) Actual, compensatory, and punitive damages against the defendant;

(2) The costs and expenses of litigation, including full attorney fees;

(3) All other relief as the Court deems necessary.

DATED this 7th day of June, 2021

NORTHERN JUSTICE PROJECT, LLC
Attorneys for Plaintiff

By: _____
James J. Davis, Jr., AK Bar No. 9412140
Goriune Dudukgian, AK Bar No. 0506051

Northern Justice Project, LLC
A Private Civil Rights Firm
406 G Street, Suite 207
Anchorage, AK 99501
Phone: (907) 308-3395; Fax: (866) 813-8645